COOLEY LLP
ALI M. M. MOJDEHI (123846)
(AMOJDEHI@COOLEY.COM)
JANET D. GERTZ (231172)
(JGERTZ@COOLEY.COM)
BRIAN W. BYUN (264506)
(BBYUN@COOLEY.COM)
4401 Eastgate Mall
San Diego, CA  92121-1909
Telephone:    (858) 550-6000
Facsimile:    (858) 550-6420

Attorneys for Creditor
The Minority Voting Trust, David F. Veyna,
Carmen Veyna, and Anna M. Zankel, Trustees

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re<br><br>ORANGE COUNTY NURSERY, INC., a California corporation,<br><br>Debtor, | Case No. 1:09-bk-22100-GM<br><br>Chapter: 11<br><br>**MOTION OF THE MINORITY VOTING TRUST FOR PARTIAL RECONSIDERATION OF ORDER REGARDING THE TREATMENT AND VALUATION OF THE CLAIM OR INTEREST OF THE MINORITY VOTING TRUST AND ORDER SETTING HEARING TO SCHEDULE AN EVIDENTIARY HEARING; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**HEARING:**<br>**DATE:** **OCTOBER 9, 2012**<br>**TIME:** **10:00 A.M.**<br>**PLACE:** **U.S. BANKRUPTCY COURT**<br>     **COURTROOM 303**<br>     **21041 BURBANK BLVD.**<br>     **WOODLAND HILLS, CA 91367** |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

772916 v6/SD

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................................. 1

II.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND .................................... 2

III. AUTHORITIES AND ARGUMENT .................................................................................. 4

    A.  Standard for Motions for Reconsideration ................................................................ 4

    B.  The Section 2000 Claim Order Is Based on Errors of Law and Fact ....................... 5

        1.  Section 510(b) Is Inapplicable to the Facts Here ........................................ 5

            a.  The Minority's Damages Arise from OCN's Breach of the Judgment ......................................................................................... 5

            b.  There Is No "Sale or Purchase" of a Security of the Debtor........... 5

            c.  The Minority Does Not Have a Claim for "Rescission," But Rather for Damages Arising from OCN's Breach of the Judgment ......................................................................................... 6

        2.  OCN's Section 2000 Election Created a Pre-Petition Subordination Agreement between the Majority and the Minority under California State Law Which Must Be Enforced Pursuant to Section 510(a) ............... 7

        3.  The Policy Rationale for Application of Section 510(b) Does Not Apply Here ................................................................................................ 8

    C.  The Section 2000 Claim Order Should Be Amended to Prevent Injustice ........... 10

IV. CONCLUSION ................................................................................................................ 11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Broadcasting Sys., Inc. v. Nugent (In re Betacom of Phoenix, Inc.)*,
    240 F.3d 823 (9th Cir. 2001) .................................................................................................. 8

*In re Arden Props., Inc.*,
    248 B.R. 164 (Bankr. D. Ariz. 2000) ..................................................................................... 5

*Auto Servs. Co., Inc. v. KPMG, LLP*,
    537 F.3d 853 (8th Cir. 2008) .................................................................................................. 4

*Brodsky v. Seaboard Realty*,
    206 Cal. App. 2d 504 (1962) .................................................................................................. 6

*Burtch v. Gannon (In re Cybersight LLC)*,
    2004 U.S. Dist. LEXIS 24426 (D. Del. Nov. 17, 2004) ......................................................... 9

*Carrieri v. Jobs.com, Inc.*,
    393 F.3d 508 (5th Cir. 2004) .................................................................................................. 8

*In re Christian Life Ctr.*,
    821 F.2d 1370 (9th Cir. 1987) ................................................................................................ 4

*GMGRSST, Ltd. v. Menotte (In re Air Safety Int'l, L.C.)*,
    336 B.R. 843 (S.D. Fla. 2005) ................................................................................................ 7

*Lippi v. City Bank*,
    955 F.2d 599 (9th Cir. 1992) .................................................................................................. 5

*New York v. New York, N.H. & H.R. Co.*,
    344 U.S. 293 (1953) .............................................................................................................. 10

*Ronald v. 4-C's Elec. Packaging, Inc.*,
    168 Cal. App. 3d 290 (1985) .................................................................................................. 6

*In re SeaQuest Diving, LP*,
    579 F.3d 411 (5th Cir. 2009) .................................................................................................. 6

*Thompson v. United States*,
    1993 U.S. Dist. LEXIS 12384 (S.D. Tex. May 11, 1993) .................................................... 10

*Weissmann v. Pre-Press Graphics Co. (In re Pre-Press Graphics Co.)*,
    307 B.R. 65 (N.D. Ill. 2004) ................................................................................................... 9

# TABLE OF AUTHORITIES
### (continued)

**Page**

**STATUTES AND RULES**

11 U.S.C.
§ 502(j) .................................................................................................................................... 4
§ 510(a) ........................................................................................................................ 2, 7, 8, 10
§ 510(b) ............................................................................................................................. passim
§ 726 ........................................................................................................................................ 7

28 U.S.C.
§ 158(a) ................................................................................................................................... 4

Fed. R. Civ. P.
59(e) ........................................................................................................................................ 4
60(b) ........................................................................................................................................ 4

Fed. R. Bank. P.
3008 ........................................................................................................................................ 4
9023 ........................................................................................................................................ 4

Cal. Corp. Code
§ 1306 ...................................................................................................................................... 7
§ 2000 ............................................................................................................................... passim

**OTHER AUTHORITIES**

COLLIER ON BANKRUPTCY, ¶ 510.03 (16th ed. 2012) ................................................................... 7

The Minority Voting Trust, David F. Veyna, Carmen Veyna, and Anna M. Zankel, Trustees (the "Minority") of Orange County Nursery, Inc., the debtor herein ("OCN"), hereby moves (the "Motion") for partial reconsideration of this Court's Order Regarding the Treatment and Valuation of the Claim or Interest of the Minority Voting Trust and Order Setting Hearing to Schedule an Evidentiary Hearing (Doc. No. 648) (the "Section 2000 Claim Order").[1]

The Minority files concurrently herewith and in support of the Motion (1) a Memorandum of Points and Authorities; (2) the declaration of Ali M.M. Mojdehi (the "Mojdehi Declaration"); and (3) a Request for Judicial Notice ("RJN"), and respectfully represents as follows:

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The priority of the Minority's Section 2000 Claim[2] was not within the scope of briefing mandated by the Court at the hearing held on May 29, 2012. Rather, the only issues which were to be briefed (as specified by the Court in its tentative ruling, pursuant to the Remand Order) were: the **proper date of valuation** and **valuation methodology** of the Section 2000 Claim. Because the Court ordered simultaneous briefing, the Minority did not have an opportunity to respond to OCN's arguments on subordination of the Section 2000 Claim, which went beyond the scope of the briefing directed by this Court.[3] The Court adopted OCN's erroneous arguments on subordination without the benefit of any input from the Minority. As a courtesy to the Court and as a matter of due process and basic fairness to the Minority, the Minority seeks to provide input now on the issue of whether the Section 2000 Claim must be subordinated.

Section 510(b) of the Bankruptcy Code does not apply here to subordinate the Minority's Section 2000 Claim to the same priority as equity, because (1) the District Court characterized the

---

[1] The Minority does not contest that portion of the Section 2000 Claim Order (i) holding that the Section 2000 Claim "be valued based on the going-concern value of the Debtor as of the petition date"; or (ii) setting the status conference to set an evidentiary hearing on the value of the Section 2000 Claim. *See* Section 2000 Claim Order at 2.

[2] All capitalized terms used but not defined in this Introduction shall be defined below.

[3] While this issue was briefed by the parties approximately three years ago, in connection with, *inter alia*, the Minority's Motion for Order Determining Priority of Claim (Doc. No. 297) (the "Claim Determination Motion"), the Court's order on the Claim Determination Motion (Doc. No. 350) and the tentative ruling incorporated into that order (Doc. No. 352) (together the "Claim Determination Order") only addressed section 510(b) in the context of its inapplicability to subordination of the Minority's equity interest (which was ultimately determined by the District Court to be a claim) to other equity interests.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

772916 v6/SD

1    Section 2000 Claim as one for damages arising from OCN's breach of the Judgment (*i.e.*, in that
2    after OCN failed to pay the court-approved appraised fair value of the Minority's shares in OCN,
3    it then failed to dissolve the corporation pursuant to the mandate of the Judgment), rather than
4    from a purchase or sale of the Minority's shares; (2) OCN's pre-petition affirmative election and
5    subsequent obligation to redeem the Minority's shares pursuant to Section 2000 or dissolve do
6    not constitute "a purchase or sale" of a security under Ninth Circuit precedent; (3) OCN's
7    decision not to abide by the Superior Court's Judgment does not constitute a "rescission"; (4)
8    OCN's Section 2000 election created a subordination agreement under California law between
9    the Minority and the Majority which must be enforced in this bankruptcy case pursuant to section
10   510(a); and (5) the policy considerations of (i) distinguishing between the different risk and return
11   expectations of creditors and shareholders; and (ii) not allowing equity to share *pari passu* with
12   general unsecured creditors are not at issue or advanced by application of section 510(b) here.

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

**1.**    On October 12, 2010, the United States District Court for the Central District of California (the "District Court") entered an order (the "Remand Order") reversing, *inter alia*, the Claim Determination Order and remanding to this Court, among other issues, "the appropriate valuation" of the Minority's claim arising from that certain decree entered pre-petition by the Superior Court for the State of California, County of Orange ("Superior Court" and the decree, the "Judgment"), which ordered the majority shareholders of OCN (the "Majority"), pursuant to Cal. Corp. Code § 2000 ("Section 2000"), to either pay the appraised fair value of the Minority's shares (in the amount of approximately $5.25 million) by a date certain or dissolve the company (the "Section 2000 Claim"). *See* RJN, Ex. 1 (Remand Order) at 10-11.

**2.**    On May 29, 2012, pursuant to the Remand Order, the Court held a hearing and status conference, during which the Court, *inter alia*, set June 21, 2012 as the deadline for the parties to simultaneously submit separate briefs on the valuation of each of (1) the Minority's claim for attorneys' fees arising under Section 2000 (the "Attorney Fee Claim"); and (2) the Section 2000 Claim. *See* Mojdehi Decl., ¶ 3.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

772916 v6/SD    2.

3.  Specifically, with respect to the Section 2000 Claim, the parties' briefs were to address (1) the "timing of valuation" (*i.e.*, "should [the Section 2000 Claim] be valued in the amount set by the Superior Court (effectively the petition date), the actual petition date, or the confirmation date (presumably the date of the actual confirmation hearing)?"); and (2) the "valuation standard" (*i.e.* "should this be the liquidation value or some other measure of value?"). *See* RJN, Ex. 2 (tentative ruling entered May 25, 2012); *see also* Mojdehi Decl., ¶ 4.

4.  On June 21, 2012, the parties submitted their briefs. *See* Doc. Nos. 613 (OCN's Section 2000 Claim brief), 614 (OCN's Attorney Fee Claim brief), 616 (Minority's Attorney Fee Claim brief), 621 (Minority's Section 2000 Claim brief). No further briefing was allowed by the Court or submitted by the parties.[4]

5.  Priority of the Section 2000 Claim was not raised as an issue by the Court or by either of the parties at the May 29 hearing, and for that reason, the Minority did not address the issue of priority of the Section 2000 Claim. *See* Mojdehi Decl., ¶ 5.

6.  Despite the limited scope of the issues to be briefed, OCN argued in its Section 2000 Claim brief, *inter alia*, that, pursuant to section 510(b) of the Bankruptcy Code, "no matter what value is given to the [Section 2000 Claim], the … claim will have the same priority as common stock." *See* Doc. No. 613 at 8. This argument exceeded the scope of issues to be briefed as directed by this Court and pursuant to the Remand Order.

7.  On July 31, 2012, the Court held a hearing on the Attorney Fee Claim but did not address the Section 2000 Claim. *See* Mojdehi Decl., ¶ 6; *see also* RJN, Ex. 3 (tentative ruling entered July 30, 2012).

8.  On August 17, 2012, the Court entered an order (Doc. No. 635) memorializing the Court's rulings from the July 31, 2012 hearing (the "Attorney Fee Claim Order"). *See* RJN, Ex. 4 (Attorney Fee Claim Order).

---

[4] OCN did object to certain evidence submitted in support of the Minority's Attorney Fee Claim brief (Doc. No. 629), which objections were ultimately sustained in part and overruled in part by the Court. *See* RJN, Ex. 3 at § 3.

**9.** On September 4, 2012, the Court entered the Section 2000 Claim Order, as well as a "Memorandum of Opinion Regarding the Treatment and Valuation of the Claim or Interest of the Minority Voting Trust [Docket 592]" (Doc. No. 647) (the "Memorandum Opinion").

### III. AUTHORITIES AND ARGUMENT

#### A. Standard for Motions for Reconsideration

As a preliminary matter, to the extent the Section 2000 Claim Order is "[a]n order subordinating a claim to general creditors' claims[, it] is appealable if no further proceedings will affect the scope of the order." *In re Christian Life Ctr.*, 821 F.2d 1370, 1373 (9th Cir. 1987) (citation omitted). Here, as in *Christian Life Center*, the Court, by the Section 2000 Claim Order, has "finally determined the question of subordination of" the Minority's Section 2000 Claim, and "[n]o further action on this issue is contemplated or necessary." *Id.* "Indeed, the order disposes of the [Section 2000 Claim] as a practical matter." *Id.*; *see* Memo. Op. at 11 ("The subordination of the Minority's claim under §510(b) renders the issues of valuation irrelevant because equity will not receive any recovery under the Debtor's plan.").

Therefore, because the Section 2000 Claim Order is a final, appealable order under 28 U.S.C. § 158(a), this motion for reconsideration should be treated under the standards of Rule 59(e) of the Federal Rules of Civil Procedure. *See*, *e.g.*, *Auto Servs. Co., Inc. v. KPMG, LLP*, 537 F.3d 853, 856 (8th Cir. 2008) (when reconsideration is sought from final order, such a motion will be treated either as one under Rule 59(e) or as one under Rule 60(b), depending on date the motion was filed). This motion is filed within 14 days of entry of the Section 2000 Claim Order. *See* Fed. R. Bankr. P. 9023 (adopting Rule 59 and allowing 14 days to file motion for new trial or to alter or amend judgment after entry of judgment).[5]

A motion to alter or amend a judgment under Rule 59 may be granted on any one of four grounds: (1) the judgment is based upon manifest errors of law or fact; (2) there is newly discovered or previously unavailable evidence; (3) amendment is necessary to prevent manifest

---

[5] Fed. R. Bankr. P. 3008 and section 502(j) of the Bankruptcy Code, dealing with reconsideration of claims, are not applicable here because the Section 2000 Claim has not been "allowed or disallowed" by the Court's Section 2000 Claim Order.

injustice; or (4) there is an intervening change in the controlling law. *See In re Arden Props., Inc.*, 248 B.R. 164, 168 (Bankr. D. Ariz. 2000) (citations omitted).

### B. The Section 2000 Claim Order Is Based on Errors of Law and Fact

#### 1. Section 510(b) Is Inapplicable to the Facts Here

##### a. The Minority's Damages Arise from OCN's Breach of the Judgment

In its response brief on appeal of the Claim Determination Order to the District Court, OCN argued this very issue – *i.e.*, that, should the District Court find that the Section 2000 Claim is a claim under the Bankruptcy Code, it should be subordinated pursuant to section 510(b). *See* RJN, Ex. 5 at 20. The District Court effectively rejected this argument by holding that, because "OCN did not make a prepetition payment for the Minority's shares and the trustee did not do so within 60 days after filing the petition[,] … the Minority has a claim for the value of its shares **had OCN been dissolved**." RJN, Ex. 1 at 10 (emphasis added). In other words, rather than a claim "for damages arising from the purchase or sale" of a security of the debtor (11 U.S.C. § 510(b)), the Minority's Section 2000 Claim is for damages arising from **OCN's breach of the Judgment** – that is, its **failure to dissolve**. As such, section 510(b), by its terms, is inapplicable here, and the District Court has implicitly ruled on this issue which should be the law of the case.

##### b. There Is No "Sale or Purchase" of a Security of the Debtor

Even if one were to go "behind the Judgment," as a matter of law, Section 510(b) is inapplicable under the facts here, because this case does not involve "a purchase or sale of a security of the debtor," *see* 11 U.S.C. § 510(b), but rather a statutorily-driven, affirmative election made by a California corporation to repurchase its own stock from a shareholder. In *Lippi v. City Bank*, the Ninth Circuit stated that "[a] transaction by which a corporation acquires its own stock from a stockholder for a sum of money is not really a sale." 955 F.2d 599, 609 (9th Cir. 1992) (citations omitted). This is so, because "[t]he corporation does not acquire anything of value equivalent to the depletion of its assets . . . It is simply a method of distributing a proportion of the assets to the stockholder." *Id.* (citations omitted). The transaction underlying the Judgment here was at best a transaction for redemption of the Minority's equity interest, based upon OCN's

election and the judicially determined fair value of that interest as of August 4, 2006. The other "transaction," of course, was the dissolution of OCN. Neither constituted a "forced purchase," and so section 510(b) does not apply to subordinate the Section 2000 Claim.

### c. The Minority Does Not Have a Claim for "Rescission," But Rather for Damages Arising from OCN's Breach of the Judgment

Moreover, as the Court pointed out in its Memorandum Opinion, there exists a distinction between a "rescission-based claim, which [is] subject to §510(b) subordination, [and] a claim based on redemption of ownership interests, which *might* not be." Memo. Op. at 6 (emphasis in original) (discussing *In re SeaQuest Diving, LP*, 579 F.3d 411 (5th Cir. 2009)). "Rescission" is defined as "[a] party's *unilateral* unmaking of a contract for a legally sufficient reason, such as the other party's material breach, or a judgment rescinding the contract; voidance." *SeaQuest Diving*, 579 F.3d at 419 (quoting BLACK'S LAW DICTIONARY 1332 (8th ed. 2004) (emphasis added)). Here, there could be no unilateral "rescission" of the Superior Court's Judgment by OCN, because (a) the Judgment was not a contract; and, (b) more importantly, an election to buy back a shareholder's shares under Cal. Corp. Code § 2000 may be revoked **only with the trial court's permission**. *See Brodsky v. Seaboard Realty*, 206 Cal. App. 2d 504, 517 (1962). Otherwise, the election is irrevocable. *See Ronald v. 4-C's Elec. Packaging, Inc.*, 168 Cal. App. 3d 290, 303 (1985) (citing *Brodsky*, *supra*, 206 Cal. App. 2d at 517).

The Section 2000 Claim is, therefore, not one for damages arising from OCN's "rescission" of the Judgment, but rather is more closely analogous to a "redemption-based" claim to the extent the Judgment provided the Minority with "an enforceable right to payment for its shares – either $5,249,928 for their appraised value or, if OCN chose not to tender this amount by the court-imposed deadline, for their actual value upon OCN's forced dissolution." RJN, Ex. 1 at 10. Currently, in light of OCN's failure to dissolve, the Section 2000 Claim is one for damages arising from OCN's *breach* of the Judgment. The Claim is not susceptible to subordination under section 510(b) on this ground.

**2. OCN's Section 2000 Election Created a Pre-Petition Subordination Agreement between the Majority and the Minority under California State Law Which Must Be Enforced Pursuant to Section 510(a)**

Pursuant to California Corporations Code section 1306, if a corporation lacks retained earnings or other net assets which lawfully can be used for payment to any holders of dissenting shares of their fair market value, the judgment or debt to a dissenting shareholder is not payable until the corporation acquires such funds. In the meantime, such shareholders "shall become *creditors* of the corporation for the amount thereof together with interest at the legal rate on judgments until the date of payment, but subordinate to all other creditors in any liquidation proceeding." Cal. Corp. Code § 1306 (emphasis added); *see also* C. Hugh Friedman, Calif. Practice Guide, Corporations 7:136.3 (Rutter Group 2002) ("Under California law, any balance owing to a shareholder under a repurchase agreement is subordinated to the claims of corporate creditors."). Here, the Minority acknowledges and has never disputed in this bankruptcy case that the Section 2000 Claim is subordinate to the claims of general unsecured creditors. However, under California law, the Minority's claim is superior to the interests of equity, and under section 510(a), this priority, established pre-petition by OCN's affirmative Section 2000 election, may not be disturbed by section 510(b).

Section 510(a) provides that a subordination agreement "is enforceable in a case under [title 11] to the extent that such agreement is enforceable under applicable nonbankruptcy law." 11 U.S.C. § 510(a). The mandate of section 510(a) is unqualified: If an agreement is a subordination agreement, it *must* be enforced according to its terms. *See* 5 COLLIER ON BANKRUPTCY, ¶ 510.03 (16th ed. 2012). Courts must look solely to applicable state contract law to determine the scope and enforceability of a subordination agreement without regard to federal law. *Id.*

A subordination agreement is one in which "a party having a superior right of some sort agrees with someone having an inferior right that, as between the two of them, the inferior right shall be treated as if it were superior." *GMGRSST, Ltd. v. Menotte (In re Air Safety Int'l, L.C.)*, 336 B.R. 843, 858 (S.D. Fla. 2005) (stipulation entered into by debtor that altered and compromised debtor's absolute entitlement to receive surplus under section 726 of the

Bankruptcy Code was a subordination agreement, enforceable under section 510(a)) (citation omitted). Here, as in *GMGRSST*, the Judgment was essentially a court-approved stipulation, which compelled the Minority to surrender all right, title and interest in OCN upon receipt of payment in full, including all rights to any appreciation of its equity ownership interest in OCN retroactive to August 4, 2006. In exchange, OCN and the Majority provided the Minority an express covenant of subordination as to the equity interests of the Majority, up to the actual amount of such appraised value, again as of August 4, 2006.

The application of section 510(a) is not inconsistent with section 510(b). *See*, *e.g.*, *Carrieri v. Jobs.com, Inc.*, 393 F.3d 508, 527-28 (5th Cir. 2004) (finding shareholder's claim to be subordinated under both sections 510(a) and (b) and stating that post-petition steps to alter a pre-petition subordination agreement between two groups of shareholders was in contravention of section 510(a)).

The pre-petition agreement of OCN to subordinate the Majority's equity interest to the Section 2000 Claim, pursuant to its Section 2000 election, the Judgment (*i.e.*, a court-approved stipulation) and California corporate law, must be enforced pursuant to section 510(a) and not contravened by further subordination under section 510(b).

### 3. The Policy Rationale for Application of Section 510(b) Does Not Apply Here

According to the Ninth Circuit, the dual rationale for mandatory subordination under section 510(b) relates to the claimant's position vis-à-vis other *creditors*: (1) "the dissimilar risk and return expectations of shareholders and creditors; and (2) the reliance of creditors on the equity cushion provided by shareholder investment." *Am. Broadcasting Sys., Inc. v. Nugent (In re Betacom of Phoenix, Inc.)*, 240 F.3d 823, 830 (9th Cir. 2001); *see* Memo. Op. at 4 (quoting *Betacom*).

The Court's statement that "[i]f [OCN] does not make the payment specified in the [J]udgment, the Minority will be equity holders" (Memo. Op. at 10) ignores the pre-condition that OCN must first **dissolve** in order for that statement to be true with respect to the Section 2000 Claim. At this point, however, because OCN breached the Judgment – *i.e.*, failed to pay the

appraised fair value of the Minority shares by the date that was 60 days after the petition date and then failed to dissolve the corporation – and while the Debtor is an ongoing business, the Minority is a *creditor*, as established by the Remand Order, and the value of the Section 2000 Claim is a **fixed amount**, not susceptible to fluctuation depending on how the company is doing at any given moment. Indeed, this Court has held that the value of the Section 2000 Claim is fixed as "based on the going-concern value of the Debtor **as of the petition date**." Section 2000 Claim Order at 2 (emphasis added). In other words, the Minority has **no** "expectation of sharing in the risks and rewards of the debtor as equity" vis-à-vis the Section 2000 Claim, because the value of its claim is fixed as of the date of the petition. Memo. Op. at 10; *cf. also Burtch v. Gannon (In re Cybersight LLC)*, 2004 U.S. Dist. LEXIS 24426, *8-9 (D. Del. Nov. 17, 2004) (owner's exchange of equity for judgment obligating debtor to redeem his shares "extinguished … [the claimant's] ability to participate in any of [debtor's] profits or losses").

In addition, this policy has no relevance to disputes such as this one, which is solely an adjudication of rights *as between holders of equity* and has no potential impact on creditors' rights.

In the Memorandum Opinion, the Court states on multiple occasions that the Minority seeks, by the Attorney Fee Claim and the Section 2000 Claim, to "recover its investment *pari passu* with creditors and disregard the absolute priority rule." Memo. Op. at 7; *see also id.* at 8 (discussing and relying on *Weissmann v. Pre-Press Graphics Co. (In re Pre-Press Graphics Co.)*, 307 B.R. 65, 79 (N.D. Ill. 2004) to find that "the Minority are disaffected shareholders seeking to recoup their investment at the expense of unsecured creditors"); *see also id.* at 10 (remarking on the "fundamental unfairness of allowing some shareholders to elevate themselves at the expense of creditors and other shareholders"). However, the Minority has acknowledged, since the beginning of this bankruptcy case, that its claims are **subordinate** to the claims of general unsecured creditors pursuant to state law.

The Section 2000 Claim Order and Memorandum Opinion therefore operate on incorrect factual premises with respect to the policy rationale behind application of section 510(b) to the Section 2000 Claim, and reconsideration of the Section 2000 Claim Order is warranted.

### C. The Section 2000 Claim Order Should Be Amended to Prevent Injustice

Additionally, as set forth above, the Minority understood, from the Court's tentative ruling and oral ruling at the hearing on May 29, 2012, that the scope of briefing with respect to the Section 2000 Claim was (consistent with the Remand Order) limited to its valuation, and specifically, the proper date of valuation (*i.e.*, petition date or confirmation date) and the proper methodology for valuation (*i.e.*, going concern or liquidation); the Claim's *priority* was never raised as an issue, and the Minority received no notice that it was.

The Court adopted the Debtor's argument on subordination, without the benefit of any input by the Minority (since the parties' briefs were submitted simultaneously and no further briefing was allowed by the Court). The subordination of the Section 2000 Claim in this fashion is highly prejudicial to the Minority, which, to date, has relied on its superior position vis-à-vis equity to challenge the confirmability of OCN's plan of reorganization.

Therefore, any dispute as to the priority of the Section 2000 Claim (of which the Minority was unaware, based on the Court's ruling at the May 29, 2012 hearing) should be subject to the procedural protections provided by the Bankruptcy Rules and the Federal Rules of Civil Procedure, and the Minority should be given an opportunity to contest any change in priority, which, as explained above, was established pre-petition by OCN's Section 2000 election, the Judgment and California state law and must be upheld by application of section 510(a). *Cf. Thompson v. United States*, 1993 U.S. Dist. LEXIS 12384, *4 (S.D. Tex. May 11, 1993) ("A creditor is entitled to proper, adequate, and constitutional notice before its claim is forever barred.") (citing *New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 73 S. Ct. 299, 97 L. Ed. 333 (1953)).

///
///
///
///
///
///

Case 1:09-bk-22100-GM    Doc 652    Filed 09/18/12    Entered 09/18/12 21:07:46    Desc
                    Main Document      Page 15 of 15

## IV.  CONCLUSION

For the reasons set forth above, the Minority respectfully requests that the Court enter an order granting the Motion and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: September 18, 2012

COOLEY LLP

By:    /s/ Ali M.M. Mojdehi
     Ali M. M. Mojdehi (123846)
     Janet D. Gertz (231172)
     Brian W. Byun (264506)

Attorneys for Creditor
The Minority Voting Trust, David F. Veyna,
Carmen Veyna, and Anna M. Zankel, Trustees

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

772916 v6/SD                    11.